IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY CO. | § | |
| | § | |
| V. | § | NO. 1:17-CV-801-RP |
| | § | |
| TEXAS BRIDGE, INC., et al. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROPERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff's Motion for Summary Judgment (Dkt. No. 21). Defendants did not file a response. The District Court referred the motion to the undersigned for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. GENERAL BACKGROUND

On or about April 30, 2004, Texas Bridge, Inc., TBI Investments, LLC and Spiros Kollias ("Defendants") executed a General Agreement of Indemnity in favor of Continental Casualty Company ("CCC") in which CCC agreed to issue certain surety bonds on behalf of Defendants in exchange for Defendants agreeing to indemnify CCC against costs and expenses it would incur as a result of having executed the bonds. At the request of the Defendants, CCC issued a performance bond and a payment bond naming Texas Bridge Partners, LP as principal, and the State of Texas as obligee, on a construction project referred to as Loop 481 South Llano River Bridge in Junction, Kimble County, Texas (the "Project"). After a dispute arose between the State of Texas and Texas Bridge Partners in connection with the Project, the State of Texas declared Texas Bridge Partners in default and made a claim on the Performance Bond issued by CCC in connection with the Project.

In July 2007, the State of Texas through the Texas Department of Transportation filed a lawsuit against Texas Bridge Partners and CCC seeking recovery of damages allegedly resulting from Texas Bridge Partners' breach of the construction contract for the Project. CCC subsequently settled the Performance Bond Claim made the subject of the lawsuit and paid the State of Texas $1,525,000.00. In addition, CCC incurred and paid $73,654.88 in expenses, including attorneys' fees and expenses related to the investigation of the Performance Bond Claim, as a result of having executed the Performance Bond, procuring a release of liability, and in bringing suit to enforce the Defendants' obligations under the Agreement of Indemnity.

As a result of the Performance Bond Claim, the lawsuit, and Defendants' failure to satisfy its obligations under the Indemnity Agreement, CCC contends it has suffered losses and expenses through the date of this Motion in the total amount of $1,598,654.88. CCC has made a demand upon Defendants to comply with their obligations under the Indemnity Agreement but Defendants have failed to pay CCC. Accordingly, on August 17, 2017, CCC filed this lawsuit to enforce Defendants' obligations under the Indemnity Agreement. CCC's Second Amended Complaint alleges breach of the Indemnity Agreement, common law indemnification and seeks attorneys fees, costs and interest.

CCC has now filed a motion for summary judgment arguing that it has established as a matter of law that Defendants violated the Indemnity Agreement and that it is entitled to recover $1,598,654.88 for the full amount of its loss and expenses to date, plus interest. As noted, Defendants have failed to file a response to the motion.

## II. LEGAL STANDARD

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and

that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

# III. ANALYSIS

CCC moves for summary judgment arguing that it has established as a matter of law that Defendants violated the Indemnity Agreement and that it is entitled to recover $1,598,654.88 for the full amount of its loss and expenses to date, plus interest.

## A.     Defendant's Failure to Respond

Defendants have failed to file a response to the Motion for Summary Judgment. Under Rule CV-7(e)(2) of the Local Court Rules for the Western District of Texas, the Court may grant a motion as "unopposed" if a party fails to file a response within the time period prescribed by the rule. However, "where the motion at issue is for summary judgment, imposition of the ultimate sanction of automatically granting the motion upon failure to comply with the local rule is wholly inconsistent with Rule 56." *John v. State of La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 708 (5th Cir. 1985). *See also*, *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012) (noting that the circuit has "approached the automatic grant of a dispositive motion . . . based solely on a litigant's failure to comply with a local rule, with considerable aversion."). The Fifth Circuit has found such local rules inconsistent with Rule 56 because it could "authorize[ ] the entry of summary judgment on a record containing unresolved questions of material fact" and, therefore, "alter[ ] the scheme of shifting burdens inherent in Rule 56." *Id.* As explained in *John*:

> It is absolutely clear, however, that Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges the initial burden of demonstrating that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If the moving party fails to discharge this burden, summary judgment must be denied—even if the nonmoving party has not responded to the motion.

*Id.* (internal citations omitted). Accordingly, it is error for a court to grant summary judgment "solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment." *Id.* at 709.

While a court may not grant a motion for summary judgment on the sole basis that the respondent failed to file a response, it is appropriate for a court to accept the moving party's version of the facts as undisputed. *See Flores v. United States*, 2018 WL 314876, at *3 (5th Cir. Jan. 5, 2018) (failure to file response to the motion for summary judgment warranted district court's acceptance of the statement of facts as uncontroverted); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (same); *Gen. Elec. Capital Corp. v. Daniel Sandoval Trucking, Inc.*, 2011 WL 13229448, at *3 (N.D. Tex. Apr. 1, 2011) ("Default summary judgments are not appropriate, yet the Court is permitted to accept the movant's evidence as undisputed if the non-movant fails to file a response to the movant's motion."). "This comports with the notion that courts need not hunt through the record searching for a genuine issue of material fact." *Crop Prod. Servs., Inc. v. Clevenger*, 2016 WL 9527982, at * 2 (N.D. Tex. Aug. 16, 2016).

**B.    Has CCC's established its burden under Rule 56?**

Under Texas law, which applies to this diversity action, interpretation of indemnity agreements follows the normal rules of contract construction. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Travelers Cas. & Sur. Co. of Am. v. Padron*, 2015 WL 1981563, at *6 (W.D. Tex. May 1, 2015). According to those rules "if the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then . . . the court will construe the contract as a matter of law." *Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008).

5

In order to establish a breach of an indemnity agreement, CCC must establish the following elements: (1) the existence of a contractual indemnity agreement between the parties; (2) an obligation in the agreement for the indemnitor to indemnify the surety in the event that claims are made; (3) claims were made on the issued bonds; (4) all conditions precedent for recovery had occurred, been performed, waived, or excused; and (5) the surety has been damaged. See *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995) (per curiam) (*citing Ford v. Aetna Ins. Co.*, 394 S.W.2d 693 (Tex. Civ. App.–Corpus Christi 1965, writ ref'd n.r.e.) (discussing the enforceability of indemnity agreements under Texas law)).

CCC has produced uncontroverted evidence establishing all five elements of their indemnification claim. Specifically, CCC has submitted a copy of the Indemnity Agreement, which provides, in relevant part:

> 2. The lndemnitors [Defendants] will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefore, including, but not limited, to fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event the Company deems it necessary to make an independent investigation of a claim, demand or suit, the Indemnitors acknowledge and agree that all expense attendant to such investigation is included as an indemnified expense. In the event of payments by the Company, the Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefore to the Company.
>
> * * *
>
> 5. The [CCC] shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

Dkt. No. 21-1 at 7-8 ¶¶ 2 & 5. Defendants agreed to indemnify and hold CCC harmless from all costs which CCC incurred or sustained as a result of having executed the bonds, in procuring or attempting to procure release from liability, or in bringing suit to enforce the provisions of the Indemnity Agreement. Defendants also agreed that CCC had the exclusive right to settle a claim or suit brought against CCC or Defendants in connection with the bonds, and that any such settlement would be binding and conclusive upon Defendants. *Id.* at ¶ 5.

CCC has also provided evidence that at the request of the Defendants, CCC issued the performance bond and a payment bond naming Texas Bridge Partners as principal, and the State of Texas as obligee, on the construction project. Dkt. No. 21-1 at 8 ¶ 5. After the State of Texas filed suit against Texas Bridge Partners and CCC seeking recovery of damages allegedly resulting from Texas Bridge Partners' breach of the construction contract, CCC settled the Performance Bond Claim and paid the State of Texas $1,525,000.00. Dkt. No. 21-1 at 11-14. CCC also paid $73,654.88 in expenses, including attorneys' fees and expenses related to the investigation of the Performance Bond Claim, as a result of having executed the Performance Bond, procuring a release of liability, and in bringing suit to enforce the Defendants' obligations under the Indemnity Agreement. *Id.* The undisputed evidence demonstrates that as a result of the Performance Bond claim, the lawsuit, and Defendants' failure to satisfy its obligations under the Indemnity Agreement, CCC has suffered losses and expenses in the amount of $1,598,654.88. CCC has made a demand upon Defendants to comply with their obligations under the Indemnity Agreement but Defendants have failed to pay CCC. Dkt. No. 21-1 at 15-16, and 5 ¶ 10. Because CCC has established as a matter of law that Defendants violated the Indemnity Agreement and that it suffered damages in the amount of $1,598,654.88, CCC's Motion for Summary Judgment should be granted.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that Plaintiff Continental Casualty Company's Motion for Summary Judgment (Dkt. No. 21) be **GRANTED** and that the District Judge enter judgment in favor of Plaintiff against all Defendants for $1,598,654.88, plus post-judgment interest.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 30th day of May, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE